## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 15-22146-CIV-ALTONAGA

**ELITE ADVANTAGE, LLC**, *et al.*,

      Plaintiffs,

v.

**TRIVEST FUND, IV, L.P.**, *et al.*,

      Defendants.

_____/

### ORDER

Defendants, Troy Templeton ("Templeton"); Trivest Fund IV, L.P.; Trivest Partners GP, LLC; and Trivest Partners IV, Inc. (collectively "Trivest"); have filed a Motion to Transfer to the Northern District of Indiana, Hammond Division Pursuant to 28 U.S.C. § 1404(a) ("Motion") [ECF No. 24].   Plaintiffs filed their Opposition to Defendants' Motion to Transfer . . . ("Response") [ECF No. 35]; to which Defendants filed a Reply . . . ("Reply") [ECF No. 36]. The Court has carefully considered the parties' written submissions, including exhibits attached to their papers; the record; and applicable law.  For the reasons explained below, the Motion is granted.

### I.  BACKGROUND

#### A.       Allegations of the Complaint

The named Plaintiffs are Elite Advantage, LLC ("Elite") and Edward E. Sell ("Sell") (collectively "Plaintiffs"), the former an assignee of a franchise agreement with, and the latter a franchisee of, DirectBuy, Inc. ("DirectBuy").  (*See* Complaint [ECF No. 1]).  Plaintiffs bring this action seeking to certify a class consisting of all DirectBuy franchisees in the United States who

were in business at any time between the dates of November 2007 and January 1, 2012, following Defendants' purchase of DirectBuy, and who paid excessive marketing and advertising fees. (*See id.* ¶¶ 1, 73).

Elite is a Florida limited liability company with its principal place of business in Sarasota, Florida; while Sell resides in Indiana and operated a franchise in Illinois. (*See id.* ¶¶ 15–16). The Trivest entities all have their principal place of business in Coral Gables, Florida. (*See id.* ¶¶ 17–19). Defendant Templeton, a Florida resident, is the Executive Officer and Director of Trivest Partners IV, Inc.; the managing member of Trivest Partners GP, LLC; and the Managing Partner and Member of the Investing Committee of Trivest Fund IV, LP. (*See id.* ¶ 20). Templeton was the Chairman of the Board of Directors for DirectBuy and DirectBuy Holdings, Inc. while these entities were owned by Trivest. (*See id.*).

In this putative class action, Plaintiffs bring three claims against Trivest and Templeton: Claim I for "Violations of RICO Act," 18 U.S.C. § 1962(c); Claim II for "Violation of RICO," 18 U.S.C. § 1962(d); and Claim III for Violation of the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.201, *et seq.* ("FDUTPA"). (Compl. ¶¶ 27–34). The following is a summary of the pertinent facts supporting the three claims, as alleged by Plaintiffs.

DirectBuy franchises the right to own and operate members-only buying clubs under its trade name and trademarks. (*See id.* ¶ 2). Consumers pay a membership fee for the right to join the clubs where the members may purchase products at wholesale-type prices. (*See id.*). Written franchise agreements between DirectBuy and the franchisee-Plaintiffs require the latter to pay a royalty to DirectBuy equal to 22 percent of the gross amount Plaintiffs charge for new memberships sold to consumers. (*See id.* ¶ 3). Thus, DirectBuy has a strong financial incentive in generating new membership purchases at the clubs. (*See id.*).

Because DirectBuy receives royalties based on the gross amounts charged for new memberships regardless of whether Plaintiffs make a net profit, and Plaintiffs only put money in their pockets if they generate a net profit, there is an inherent conflict of interest between DirectBuy and Plaintiffs in the way each generates cash flows. (*See id.* ¶ 4). DirectBuy uses marketing and advertising to drive up the sales of new memberships, the cost of which is borne almost exclusively by the franchisees. (*See id.* ¶ 5). Given the disparity in how DirectBuy versus Plaintiffs generate cash flows, and the fact DirectBuy franchisees almost exclusively bear the financial burden of the marketing done to increase membership sales, the franchise agreements limited the contributions Plaintiffs are required to make to DirectBuy to no more than three percent of the gross amounts the franchisees charge for new memberships ("the 3% cap"). (*See id.* ¶ 6).

In November 2007, Trivest purchased DirectBuy through a highly leveraged transaction (the particulars of which are described in the Complaint and not repeated here), that required DirectBuy to drive new membership sales even more than before. (*See id.* ¶ 7). Defendants controlled DirectBuy by installing Templeton as Chairman of the Board of Directors and imposing a requirement any significant decision regarding DirectBuy operations had to be approved by Trivest and Templeton. (*See id.* ¶ 9). As a result, and through their control of DirectBuy, Defendants engaged in a scheme to fraudulently induce Plaintiffs into funding DirectBuy marketing and advertising programs by imposing unauthorized charges far in excess of the 3% cap. (*See id.* ¶ 8). Plaintiffs and the franchisee-class they seek to represent were powerless to stop DirectBuy's collection of the excessive fees because DirectBuy would claim the amounts were due and unilaterally bill the overcharges to Plaintiffs' credit cards, or would

claim and collect them as receivables in several ways (also described in the Complaint, not here). (*See id.* ¶ 11).

Defendants allegedly violated section 1962(c) of the Racketeer Influenced Corrupt Organizations Act ("RICO") by: participating in and conducting an enterprise through a pattern of racketeering that involved predicate acts of mail and wire fraud and the provision of fraudulent media bills to Plaintiffs that misrepresented the amounts Plaintiffs were legally obligated to pay in advertising fees via the U.S. mail and over interstate wires; and engaging in financial institution fraud involving the fraudulent charging of Plaintiffs' credit cards for amounts in excess of the 3% cap, which Plaintiffs did not approve.  (*See id.* ¶ 12).  Defendants allegedly violated section 1962(d) of RICO by conspiring with DirectBuy to violate section 1962(c) through the agreement of Defendants and DirectBuy to engage in the enterprise through a pattern of racketeering activity.  (*See id.*).  Defendants also allegedly violated FDUTPA by engaging in deceptive and unfair practices in the course of trade or commerce by implementing a scheme whereby DirectBuy assessed and collected excessive and unauthorized national advertising fees from Plaintiffs in order to benefit Defendants, causing Plaintiffs to lose millions of dollars.  (*See id.* ¶ 13).

### B.    The Parties' Positions and Factual Submissions

Defendants request transfer of the case to the Northern District of Indiana, Hammond Division (the "Northern District"), arguing they should benefit from a forum selection clause in the franchise agreements between Plaintiffs and DirectBuy designating all claims be brought in that district; and because application of *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568, 581 (2013) ("*Atlantic Marine*"), compels the transfer.  (*See* Mot. 7–17).  Alternatively, Defendants argue the traditional

section 1404(a) transfer-of-venue analysis favors transfer.   (*See id.* 17–21).   Defendants place great emphasis on the fact there are three lawsuits pending in the Northern District based on factual allegations "basically identical" to those stated here.   (*Id.* 2).   According to Defendants, the Court should not "countenance Plaintiffs' and their counsel's blatant forum shopping" nor aid them in their "collateral attack" on the Indiana federal district judge's rulings dismissing Trivest and dismissing all but one claim against DirectBuy, which claim will be the subject of a forthcoming motion for summary judgment.   (*Id.* 2–6).

Plaintiffs respond with two primary arguments.   First, they argue the Court should analyze the Motion under the familiar section 1404(a) factors, and in doing so, find Defendants do not meet their high burden to show transfer is warranted.   Second, Plaintiffs insist this case is not governed by the *Atlantic Marine* modified venue analysis, as Defendants are non-signatories to the franchise agreements, and the two circumstances where a non-signatory may enforce a forum selection clause do not exist here.   (*See* Resp. 1–2).

In considering the parties' competing positions, the Court is presented with information outside the Complaint.[1]   Defendants explain there are four lawsuits pending based on factual allegations "basically identical" to those made in the present Complaint, including one being handled by Plaintiffs' counsel.   (Mot. 2).   In *ArcAngelo, Inc. et al. v. DirectBuy, Inc., et al.*, Case No. 3:13-CV-104-PPS-JEM (N.D. Ind.) ("*ArcAngelo*"), plaintiffs seek to certify a class of DirectBuy franchisees who accuse DirectBuy of violating their franchise agreements by

---

[1] On a motion to transfer venue, the Court is permitted to consider materials outside the pleadings.  *See Mohsen v. Morgan Stanley & Co. Inc.*, No. 11 Civ. 6751 (PGG), 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (collecting cases).

overcharging for advertising leads.[2]   (*See id.*).   The original complaint in *ArcAngelo* alleged Trivest stacked DirectBuy's Board to compel DirectBuy to breach those agreements by charging franchisees more for advertising than was permitted.   (*See id.*).   The court in *ArcAngelo*, however, dismissed all claims against Trivest, as well as all claims against DirectBuy except for a breach of contract claim, and has since limited discovery on the remaining claim to the dispositive issue of untimely notice under the franchise agreements.  (*See id.* 2–3).   DirectBuy intends to move for summary judgment on the dispositive notice/waiver issue soon.  (*See* Mot. 6).

According to Defendants, Plaintiffs apparently recognize they have waived their claims against DirectBuy by not providing timely written notice of the purported breaches of contract, and so "have decided to head south to attempt a fresh start with newly named, but related, plaintiffs before a different Judge in a different Federal court."   (*Id.* 3).   While this case alleges different causes of action against Defendants (RICO and FDUTPA) from those the plaintiffs in *ArcAngelo* attempted to pursue, Defendants assert "the allegations against Trivest in both cases argue that Trivest controlled DirectBuy's conduct through Mr. Templeton's position on the Board of Directors, from which Plaintiffs contend that liability flows." (*Id.* 7).   Defendants insist the forum selection clause in the DirectBuy-Plaintiffs' agreements requires litigation relating to the agreements take place in the Northern District, and that clause applies to the present action that arises from the franchise agreements.  (*See id.* 3).

Defendants assert the key witnesses in this case are all associated with non-party DirectBuy.  (*See id.* 19–20).   Four of them work or reside in Indiana, and two of these, Scott Powell ("Powell") and C. Joseph Yast ("Yast"), are defendants in one of the Indiana cases.  (*See*

---

[2]  In addition to *ArcAngelo*, there are two other federal lawsuits and a state court case pending in Hammond, Indiana, arising out of the same allegations regarding excessive advertising charges.  (*See* Mot. 6).  The state case names Trivest and Templeton as defendants.  (*See id.*).

*id.*).  One, Bart Fesperman ("Fesperman"), resides in Arizona but is also a defendant in one of

the cases pending in Indiana.  (*See id.*).  Last, Plaintiff Sell resides in Valparaiso, Indiana, located

in the Hammond Division of the Northern District of Indiana.  (*See id.*).  Defendants advise all

decisions regarding DirectBuy advertising and all communications DirectBuy had with Trivest

occurred from DirectBuy's headquarters in Indiana.  (*See id.* 20).  DirectBuy employees having

material information about the advertising program include David Lee ("Lee") and Lou Ann

Klotzbach ("Klotzbach"), and they work or reside in Indiana.  (*See id.* 19).

      Plaintiffs' counsel, Dady & Gardner, P.A., is located in Minneapolis, Minnesota; and Pia

Anderson Dorius Reynard & Moss is in Milwaukee, Wisconsin; counsel are closer to Hammond,

Indiana than to Miami, Florida.  (*See id.* 20–21).  Plaintiffs' attorneys are already litigating the

soon-to-be dismissed *ArcAngelo* case in Indiana, and another related suit in Lake County,

Indiana Superior Court in Hammond.    (*See id.* 21).  Finally, Defendants provide statistics

showing the Northern District has approximately 200 fewer weighted filings per judge than this

District.  (*See id.* 15; Mot. Ex. E [ECF No. 24-5]).

      In response, Plaintiffs explain the focus of this Florida action is on the control the Trivest

Defendants exercised in Florida during the time they owned DirectBuy.  (*See* Resp. 4).  None of

the parties in this case are presently parties to any of the Indiana cases.  Elite Advantage and its

owners are Florida residents (in the Middle District of Florida).  (*See* Compl. ¶ 15).  The named

Defendants are all Florida residents.  (*See id.* ¶¶ 17–20).

      Of the 84 witnesses identified in the parties' initial disclosures, Plaintiffs assert four have

discoverable information about the objectionable conduct that took place — as framed by the

pleading — in Florida; and of those, two reside in Florida (Powell and Templeton), one resides

in Indiana (Yast), and the other in Arizona (Fesperman).  (*See* Resp. 4).  Three other Trivest

witnesses, Jamie Elias, Forest Wester, and David Gershman, are in Florida, and their testimony concerning the actual allegations of the Complaint will be needed at trial. (*See id.* 5). Defendants' witness disclosures regarding DirectBuy employees Lee and Klotzbach indicate they have little information about the Trivest-DirectBuy control and fraud theories alleged. (*See id.* 6).

Yast is general counsel for DirectBuy, an attorney of record in *ArcAngelo*, a defendant in a companion case in Indiana, and a signatory to a declaration filed in support of the Motion; Plaintiffs believe he will likely be a cooperative witness for Defendants should the case stay in Miami. (*See id.*; Yast Declaration ("Yast Decl."), Ex. C [ECF No. 24-3]). Powell has a home in Fort Myers, Florida. (*See* Resp. 6). All other identified witnesses are non-parties, such as franchisees or former DirectBuy employees who reside outside of Florida and Indiana. (*See id.* 7). Last, Plaintiffs explain while there may be fewer weighted cases in the Northern District, the Southern District of Florida is faster and more efficient at case disposition than is Indiana; this District ranks ninth nationally from filing to trial, whereas the Northern District ranks 64th nationally. (*See id.* 12).

In a recent, July 29, 2015 filing in *ArcAngelo* (the "July 29 Statements"), and after they filed their Response in this case, Plaintiffs' counsel made the following, critical representations: "[A]ll of the claims in *ArcAngelo*, decided or undecided, against Trivest or against DirectBuy, are grounded in the same set of facts, *i.e.*, facts regarding DirectBuy's imposition of exorbitant charges for national marketing and advertising and the great economic harm these charged caused DirectBuy franchisees . . . ." (Reply, Ex. 1, 16 [ECF No. 36-1]; alterations added). Further, Plaintiffs' counsel explained:

> The specific claims against Trivest . . . are, in essence, derivative of the remaining breach of contract claim against DirectBuy. Plaintiffs allege that Trivest's

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

> acquisition of DirectBuy was highly leveraged and that Trivest passed the liability to pay the interest on this debt on to DirectBuy.  Plaintiffs further allege that Trivest masterminded a scheme under which DirectBuy overcharged its franchisees for national marketing and advertising, with no regard to the excessive burden placed on franchisees by these charges in order to generate funds to pay down Trivest's debt, and that pursuant to this scheme and at the direction of Trivest, DirectBuy breached its franchise agreements.  **Thus the claims against Trivest and the claims alleged against DirectBuy are inextricably intertwined.**

(*Id.* (alterations and highlighting added; footnote call numbers omitted)).    These July 29 Statements severely undermine several of the statements made by Plaintiffs in their Response and play a significant role in the Court's analysis below.

## II.  LEGAL STANDARDS

Federal law provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   28 U.S.C. § 1404(a) (alteration added).   The purpose of section 1404(a) is to "avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money."   *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (citation omitted).   Courts have broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"   *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *accord Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002).

Once a court finds an action could have been brought in the transferee forum, the court "must weigh various factors . . . to determine if a transfer . . . is justified."   *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (alterations added; citation omitted).

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

Courts should consider at least the following private and public interest factors to determine whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted); *see also Meterlogic*, 185 F. Supp. 2d at 1300.

It is the movant's burden to establish transfer is warranted.  *See Cent. Money Mortg. Co. [IMC], Inc. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000).  This burden is high: a plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation and internal quotation marks omitted); *accord Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001) ("Transfer can only be granted where the balance of convenience of the parties *strongly favors* the defendant." (emphasis in original; citations omitted)).  However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Windmere Corp.*, 617 F. Supp. at 10 (citations omitted).

A mandatory forum-selection clause in the parties' contract warrants a different section 1404(a) analysis.  (*See generally* Mot.; *see also* Resp. 3).  Pursuant to *Atlantic Marine*: "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."  134 S. Ct. at

10

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

581 (footnote call number omitted).  *Atlantic Marine* alters the usual section 1404(a) analysis in three ways: (1) "the plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted," *id.* at 581; (2) the Court should not consider arguments about the parties' private interests, and instead "must deem the private-interest factors to weigh entirely in favor of the preselected forum," *id.* at 582; and (3) "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules," *id.* (citation omitted).

## III.  ANALYSIS

### A.    Effect of the Franchise Agreements' Forum Selection Clause

Defendants acknowledge they are not parties to the franchise agreements containing the forum selection clause designating the Northern District as the "venue and exclusive forum in which to adjudicate any case or controversy arising from or relating to this Agreement and any guarantees by your Owners." (Yast Decl. ¶ 7; Ex. 1 to Yast Decl., Section 18.02).  Nevertheless, Defendants maintain they are sufficiently closely related to the franchise agreements to enforce the agreements' forum selection clause.  (*See* Mot. 9).  Defendants also insist the doctrine of equitable estoppel permits them to enforce the clause.  (*See id.* 10).  According to Defendants, the forum selection clause also covers fraud-based statutory claims, such as those Plaintiffs allege here.[3]  (*See id.* 12).  And while Illinois franchise law does not permit enforcement of the clause, Defendants assert Indiana resident Sell voluntarily took on the forum selection clause by joining together with Elite to represent a putative class the majority of whose members are subject to the Indiana forum selection clause.  (*See id.*).  As the forum selection clause is

---

[3] Plaintiffs agree the plain language of the forum selection clause would encompass the claims in this case, but argue Defendants have no authority to seek its enforcement.  (*See* Resp. 13 n.8).

11

enforceable, Defendants conclude application of the *Atlantic Marine* analysis compels transfer to the Northern District.  (*See id.* 13–17).

Plaintiffs take a dim view of Defendants' various contentions regarding the franchise agreements' forum selection clause.  First, Plaintiffs insist Defendants are not closely related to the franchise agreements, and it was not foreseeable the clause would apply to a dispute involving Defendants.  (*See* Resp. 13–16).  Second, Plaintiffs assert the doctrine of equitable estoppel requires a result opposite to the one proposed by Defendants, explaining it is hardly unfair to require Defendants to litigate in their home district, particularly where the necessary interdependence and concerted activity involving DirectBuy and Defendants are not present. (*See id.* 16–19).  Last, Plaintiffs point out Defendants cannot enforce the forum selection clause against Sell.  (*See id.* 19–21).

In *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998), the court announced the rule that "in order to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound." (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (internal quotation marks and other citations omitted)).  In *Lipcon*, investors who had entered into contracts to invest with Lloyd's, an insurance market, sued Lloyd's for securities violations they alleged occurred in connection with their contracts to invest with Lloyd's.  *See id.* at 1288–89.  The investors' spouses joined the suit.  *See id.*  The Eleventh Circuit affirmed enforcement of a forum selection clause contained in the applicable contracts both to the investors' claims and their spouses' claims, holding "the interests of the spouses in this dispute are completely derivative of those of the [investors]—and thus [were] directly related to, if not predicated upon[,] the interests of the [investors] . . . ."  *Id.* at 1299 (alterations added; internal quotations marks and citation omitted).

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

Similarly, in *Hugel*, the principal of an insurance brokerage firm entered into a contract to become a member in the Corporation of Lloyd's. *See* 999 F.2d at 207. Both the principal and his brokerage firm, a non-signatory to the membership contract, brought suit against Lloyd's for breach of contract and breach of fiduciary duty, among other claims, based upon Lloyd's' alleged breach of confidentiality with respect to an ongoing internal investigation. *See id.* The Seventh Circuit upheld enforcement of the membership contract's forum selection clause to the brokerage firm's claims, holding it was "foreseeable" the firm would be bound because the principal was a 99 percent shareholder of the brokerage firm and the principal made a conscious decision to involve his firm in his contractual relationship with Lloyd's, the relationship from which both his and his firm's claims arose. *See id.* at 209–10.

*Lipcon* and *Hugel* teach the critical consideration to extending the reach of a contractual forum selection clause to a non-party is how closely related to the dispute the non-party is so that it is foreseeable the non-party will be bound by it. This closeness/foreseeability element was lacking in *Woods v. Christensen Shipyards, Ltd.*, for example, where the court held a forum selection clause did not apply to bind a spouse who was a non-signatory to the contract at issue. *See* Case No. 04-61432-CIV, 2005 WL 5654643 (S.D. Fla. Sept. 23, 2005). In that case, Eldrick "Tiger" Woods, his wife, Elin, and others sued the shipyard from which they purchased a yacht, alleging the shipyard engaged in the unauthorized use of Woods's name and likeness in violation of the contract for the yacht's purchase, which was signed by a Woods-controlled corporation and the shipyard, and in violation of Florida law. *See id.* at *1. Woods's wife brought suit asserting statutory remedies and common law tort. *See id.* at *5. The court held the wife was not bound by the forum selection clause in the contract, stating:

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

> Elin Woods does not assert any claim under the Contract, but sets forth
> statutory and common law tort claims. While[ ] Elin Woods arguably is a
> third party beneficiary under the Contract . . . she is not invoking any
> benefits under the Contract and therefore cannot be held bound by any of
> the burdens of the Contract, namely the forum selection clause. . . .  Elin
> Woods' interests are not directly related to and do not rely upon Woods'
> or [the Woods-controlled corporation]'s interests, but rather are
> independent . . . . Elin Woods is asserting tort claims on her status which
> she herself possesses independent of her husband and the Contract
> between [the corporation] and [the shipyard] . . . .

*Id.* (alterations added; internal citation omitted).

Similarly, in *Matuszevoska v. Princess Cruise Lines, Ltd.*, Case No. 06-21975-CIV, 2007
WL 7728281 (S.D. Fla. Feb. 12, 2007), the Court considered whether a decedent-seaman's wife
bringing a survival action under the Jones Act, a wrongful death claim under general maritime
law, and a wrongful death action under the Death on the High Seas Act, was bound by a forum
selection clause in her husband's employment contract with a cruise line.  In finding she was not,
the undersigned explained:

> Plaintiff's wrongful death claims are independent claims brought under statute
> and the common law, not under the contract between [the seaman] and Princess.
> Her claims are not "derivative" of [the seaman]'s contract with Princess.
> Likewise, Plaintiff's status as [the seaman]'s wife does not render her "so closely
> related" to the relationship between [the seaman] and Princess that it would be
> foreseeable that she would be bound by the forum selection clause contained in
> [the seaman]'s contract.

*Id.* at *7 (alterations added).   In contrast, the plaintiff's survival claim was derivative of the
seaman's, and the forum selection clause, if valid, would bar that claim.  *See id.*

The relationships between Defendants and DirectBuy are precisely the kind and type that
make it foreseeable Defendants would one day be able to avail themselves of the forum selection
clause. The Court recognizes Trivest argued in *ArcAngelo*, "[i]t makes sense that Trivest was not
named in Count I because Trivest is not a party to any of the Franchise Agreements with
Plaintiffs."  (Resp. Ex. E, 1 [ECF No. 35-1] (alteration added)).  But while the plaintiffs in

14

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

*ArcAngelo* could not seek to hold Trivest liable for breaches of contracts to which they were not parties, that is irrelevant to the inquiry into the degree of closeness a party must satisfy to avail itself of — or be subject to — a contract's forum selection clause. Officers, directors, and shareholders of signatories to contracts are sufficiently closely related to the signatories' contracts to enable them to enforce the contracts' forum selection clauses. *See, e.g., Xena Invs., Ltd. v. Magnum Fund Mgmt., Ltd.*, 726 F.3d 1278, 1285 (11th Cir. 2013) (affirming district court decision finding "principal decision maker" for signatory could enforce forum selection clause); *Stephens v. Entre Computer Cntrs., Inc.*, 696 F. Supp. 636, 639 (N.D. Ga. 1988) (officer of franchisor's subsidiary could enforce forum selection clause against franchisee); *Midamines SPRL Ltd. v. KBC Bank NV*, Case No. 12 Civ. 8089 RJS, 2014 WL 1116875, at *5 (S.D.N.Y. Mar. 18, 2014) (collecting cases holding officers and directors of signatory can enforce forum selection clause).

If DirectBuy did not breach the franchise agreements by charging Plaintiffs excessive advertising fees, Defendants cannot have engaged in any wrongful acts in directing those very same actions. Plaintiffs' counsel very recently admitted as much in the July 29 Statements in *ArcAngelo*. They cannot on the one hand argue there "the claims against Trivest and the claims alleged against DirectBuy are inextricably intertwined," while insisting here the requisite closeness and foreseeability required by *Lipcon* are not satisfied. It is certainly foreseeable that those parties controlling the decisions of DirectBuy, the very decisions challenged by Plaintiffs in their three-count Complaint, would be able to insist upon enforcement of the forum selection clause and require Plaintiffs to proceed against them in the Northern District.

The doctrine of equitable estoppel also supports Defendants' efforts to enjoy the benefits of the franchise agreements' forum selection clause. Plaintiffs argue it is hardly "unfair" to

15

require the Florida-based Defendants to litigate in their home district.  (*See* Resp. 16–19).  While true, this argument misapplies the equitable estoppel doctrine in this context.  "[E]quitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) (alteration added; citation omitted).  As noted by Defendants (*see* Reply 4), the doctrine focuses on Plaintiffs, as it is designed to "prevent a plaintiff from . . . trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage," *Bahamas Sales Assoc., LLC*, 701 F.3d at 1342 (alterations added), as when the contract requires litigation take place in a certain forum.

Plaintiffs place great store by their decision not to seek to hold Defendants liable for any breach of a duty under the franchise agreements, having elected to bring claims founded upon a fraudulent scheme under the RICO statutes and unconscionable business practices in violation of FDUTPA.  Yet, as Plaintiffs' counsel so well described,

> Trivest masterminded a scheme under which DirectBuy overcharged its franchisees for national marketing and advertising, with no regard to the excessive burden placed on franchisees by these charges in order to generate funds to pay down Trivest's debt, and that pursuant to this scheme and at the direction of Trivest, DirectBuy breached its franchise agreements.  Thus the claims against Trivest and the claims alleged against DirectBuy are inextricably intertwined.

(July 29 Statements 16).  *Cf. In re Humana Inc. Managed Care Litig.*, 285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds*, 538 U.S. 401 (2003) (non-signatory defendants could not enforce arbitration clause against plaintiffs alleging RICO claims, as defendants did not even suggest the contracts containing the arbitration clauses were the product of or in any way related to the alleged conspiratorial behavior).  Plaintiffs cannot rely on the franchise agreements when they

work to their advantage by establishing the statutory claims that are dependent on a breach of those agreements, yet repudiate them when they work to their disadvantage.

The contracts are not only factually significant in the telling of the story, Plaintiffs' claims are intimately founded upon and intertwined with the contractual obligations contained in the DirectBuy franchise agreements, as counsel recently acknowledged in the July 29 Statements. *See Bahamas Sales Assoc., LLC*, 701 F.3d at 1343 ("The signatory must attempt to hold the nonsignatory to the terms of the contract. . . . A but-for relationship between the claims and the contract alone is not enough to warrant equitable estoppel.") (alterations added; internal quotation marks and citations omitted)). As the Complaint explains it, the franchise agreements contain a 3% cap on advertising fees, and Defendants masterminded and directed DirectBuy's breach of that contractual provision, in violation of RICO and FDUTPA. (*See* Compl. ¶ 106). Even before the telling admission in the July 29 Statements, Plaintiffs recognized the direct relationship between the franchise agreements and their claims in this suit when they noted a breach of those agreements was an element of the RICO claims. (*See* Resp. 17, n.11; *see also* Compl. ¶¶ 8–10); *see also Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 766 (N.D. Ill. 2005) (non-signatories could enforce arbitration clause under equitable estoppel doctrine where "central goal" of RICO conspiracy was to enter into the contacts and the damages sought from the non-signatories were payments made under those contracts).

The entire theory of liability of the FDUTPA claim is that Defendants directed the allegedly unconscionable acts and practices of DirectBuy in direct violation of DirectBuy's contractual duties to Plaintiffs. As with the RICO claims, if the franchise agreements allowed DirectBuy to charge Plaintiffs the allegedly excessive amounts for advertising leads, Defendants' actions in directing those exorbitant charges be made are not unfair or deceptive. *See Blass v.*

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

*Flagstar Bancorp, Inc.*, 841 F. Supp. 2d 1280, 1285 (S.D. Fla. 2012) (finding no violation of FDUTPA where a defendant acts in accordance with contract). The foundation for the three claims in the Complaint is that Defendants directed DirectBuy in extracting higher sums for advertising than allowed under the franchise agreements, and DirectBuy assisted Defendants in defrauding Plaintiffs. (*See* Compl. ¶ 106 ("Defendants . . . conspired . . . with DirectBuy . . . .") (alterations added))). Such interdependent and concerted misconduct supports the application of equitable estoppel and consequently enforcement of the forum selection clause. *See Idearc Media Corp. v. Encore Mktg. Grp., Inc.*, Case No. 3:08-CV-223-M, 2009 WL 129379, at *3 (N.D. Tex. Jan. 20, 2009) ("Essentially, the charge is that [the signatory] was a vehicle for the Defendants' racketeering activity. These are allegations undoubtedly intertwined with the actions of [the signatory]." (alterations added; footnote call number omitted)).

All parties acknowledge Sell is not bound by his franchise agreement's forum-selection clause given Illinois law prohibits enforcement of forum selection clauses in franchise agreements. (*See* Mot. 3 n.1; Resp. 19). While Defendants argue they are not seeking to enforce the clause in the Sell franchise agreement, that is precisely what they would have the Court do by forsaking the traditional section 1404(a) analysis as it pertains to Sell and order transfer without regard to the private interest factors. That Sell has chosen to align himself with a plaintiff who may be bound by a forum selection clause is immaterial. *See McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1304 (M.D. Ga. 2003) (in applying the private interest factors of a traditional section 1404(a) analysis, court rejected argument one of several plaintiffs could be contractually bound by a forum selection clause he was not a party to).

Consequently, the Court finds the analytical framework of *Atlantic Marine*, 134 S. Ct. 568, applies to the claims brought by Elite but not the claims brought by Sell. Because the Court

18

must analyze both the private interest and public interest factors given Sell's presence in the action, the Court now turns to the traditional section 1404(a) analysis.

### B.      The Section 1404(a) Analysis

#### 1.  This Action Might Have Been Brought in the Northern District

An action might have been brought in a transferee district if that district has subject matter jurisdiction over the action, venue is proper, and the parties are amenable to service of process in the transferee forum.  *See Meterlogic*, 185 F. Supp. 2d at 1299.  Plaintiffs agree this action could have been brought in the Northern District.  (*See* Resp. 3).  This preliminary inquiry being satisfied, the Court turns to an examination of the remaining factors.

#### 2.      The Private Interest Factors Weigh in Favor of Transfer[4]

The next consideration is whether transfer would be for the convenience of the parties and witnesses and in the interest of justice.  "Private [interest] factors . . . include the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of [the] premises, and the enforceability of a judgment." *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1270 (11th Cir. 2009) (alterations added) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356 (11th Cir. 2008)).  "These factors are not exhaustive, and the district court should be flexible in applying them." *Id.* (citing *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381–82 (11th Cir. 2009)).

##### a.      *Weight Accorded Plaintiff's Choice of Forum*

In balancing the factors, the Court must account for the "'strong presumption against disturbing . . . [a plaintiff's] initial forum choice.'"  *La Seguridad v. Transytur Line*, 707 F.2d

_____

[4] Because only Sell is not bound by the forum selection clause, the private interest factor analysis focuses on him rather than Elite.

1304, 1307 (11th Cir. 1983) (quoting *Pain v. United Tech. Corp.*, 637 F.2d 775, 784–85 (D.C. Cir. 1980) (alterations added)). Yet, courts accord plaintiffs less deference where the action is a nationwide class action or "when the operative facts underlying the action occurred outside the district chosen by the plaintiff." *Moghaddam v. Dunkin Donuts, Inc.*, Case No. 02-60045-CIV-ZLOCH, 2002 WL 1940724, at *3 (S.D. Fla. Aug. 13, 2002) (citation omitted). A plaintiff's choice also deserves less weight when the plaintiff resides outside the forum. *See Soler v. Indymac Mortg. Servs.*, Case No. 14-Civ-22541, 2015 WL 3952620, at *3 (S.D. Fla. June 29, 2015) (noting where plaintiff does not reside in the forum state and seeks to represent a putative nationwide class, the general presumption in favor of a plaintiff's forum choice remains neutral).

Defendants argue Sell's choice should not be accorded deference because the class is not focused in Florida, no Plaintiff resides in the Southern District of Florida, and the operative facts underlying the action occurred in the Northern District. (*See* Mot. 18). Sell insists his choice of forum should be afforded "great weight" because the policy argument against deference in class actions (each plaintiff would be equally motivated and otherwise entitled to bring suit in his or her home forum (*see Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947))), is inapplicable given Sell is forgoing action in his home forum. (*See* Resp. 10–11). Nevertheless, the fact that purportedly defeats the decreased deference in class actions (selecting a forum outside the plaintiff's home forum) is itself a ground for decreased deference. *See Soler*, 2015 WL 3952620, at *3. Particularly in light of the July 29 Statements, evidencing Plaintiffs' counsels' bold attempt to take contrary positions in concurrent cases regarding the same underlying matter, the Court is wary of deference due to Defendants' well-founded — and now supported — concern of "forum-shopping." (Mot. 4; *see also* Reply 4 n.3; July 29 Statements 16).

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

Consequently, the Court does not accord Sell's forum choice deference, and this factor does not weigh against transfer to the Northern District.

        b.    *Convenience of Witnesses and Limitations on Compelling Appearance of Witnesses*

The convenience of party and non-party witnesses is an important factor in the analysis whether to grant a motion to transfer. *See Gonzalez v. Pirelli Tire, LLC*, Case No. 07-80453-Civ, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008). The Court lacks compulsory process over unwilling witnesses, *see Bell v. Kerzner Intern. Ltd.*, Case No. 10-23755-CIV, 2011 WL 12656691, at *9 (S.D. Fla. July 14, 2011), *aff'd*, 503 F. App'x 669 (11th Cir. 2012), and a federal court's subpoena powers are geographically limited, *see* FED. R. CIV. P. 45(c)(1). Defendants assert the Northern District is the more convenient forum because four key witnesses (Yast, Powell, Lee, and Klotzbach) associated with non-party DirectBuy work or reside within the Northern District's subpoena power. (Mot. 19). Fesperman, another key witness who resides in Arizona, is already a named defendant in another Indiana case, as are Powell and Yast. (*See id.* 19). Sell is himself a resident of Indiana within the Northern District. (*See id.* 19–20).

Sell's primary argument on this factor pertains to four Trivest witnesses who reside in Florida and whose testimony he will need. (*See* Resp. 5). This concern is dispelled by Defendants' assurance these witnesses will travel to the Northern District to testify if necessary (*see* Reply, Ex. 2 ("Gershman Decl."), 1–2 [ECF No. 36-2]). Sell also argues of four witnesses identified as having relevant discoverable information about the dispute, two reside in Florida, versus one in Indiana. (*See* Resp. 4). Yet Plaintiff concedes one of the two nominal Floridians, Powell, maintains a home in Indiana (*see id.* n.2), and is already involved in litigation in the Northern District (*see* Mot. 19). All other identified witnesses are non-parties, such as

franchisees or former DirectBuy employees who reside outside of Florida and Indiana (*see id.* 7), and thus are not subject to compulsory process in either district, *see* FED. R. CIV. P. 45(c)(1).

On balance, the Court finds the availability of witnesses and parties in the Northern District, along with the commitment the Trivest witnesses will travel to the Northern District if necessary, strongly favors transfer.

        c.     *Location of Relevant Documents and Relative Ease of Access to Sources of Proof*

According to Defendants, this factor is of little practical significance due to electronic document-imaging and retrieval. (*See* Mot. 20 (citing *Game Controller Tech. LLC v. Sony Computer Entm't Am. LLC*, 994 F. Supp. 2d 1268, 1274 (S.D. Fla. 2014)). Further, Defendants "keep the vast majority of their files electronically." (Gershman Decl. 2). Sell argues the Court should still place weight on this factor because much of the relevant documentation is likely to be in Florida. (*See* Resp. 7). Even if there is a sizable quantity of paper-only records in Florida — which Sell has not demonstrated — Plaintiff fails to identify any documents or other physical evidence that cannot be obtained in the Northern District. *See Larsen v. Kerzner Intern. Hotels Ltd.*, Case No. 08-22031-CIV, 2009 WL 1759585, at *11 (S.D. Fla. June 19, 2009); *Ward v. Kerzner Intern. Hotels Ltd.*, Case No. 03-23087-CIV-JORDAN, 2005 WL 2456191, at *4 (S.D. Fla. Mar. 30, 2005). Indeed, Defendants suggest the bulk of paper records likely exist at DirectBuy's Indiana headquarters. (*See* Gershman Decl. 2).

"Given the ease with which documents can be transported in the technological age, the Court affords no weight to the costs associated with the 'transportation of documents' as it relates to the claims and defenses of each party." *Matthews v. Whitewater West Ind., Ltd.*, Case No. 11-24424-CIV, 2012 WL 1605184, at *7 n.6 (S.D. Fla. May 8, 2012); *see also Beaman v.*

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

*Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1377 (S.D. Fla. 2011) (same).  Therefore, this factor is of little significance.

d. *Convenience of the Parties*

Defendants argue this factor is neutral because, although Sarasota-based Elite may find the Southern District of Florida comparatively convenient, and all four Defendants reside within it, Sell's residence in Indiana balances out that convenience.  (*See* Mot. 20).  Sell states only he would be required to travel to this District, whereas representatives of five parties would be required to travel to the Northern District, making the Southern District of Florida more convenient.  (*See* Resp. 7–8).  That tally is somewhat skewed by the number of Defendants who are jointly represented.  Moreover, given the analytical framework of *Atlantic Marine*, the convenience for Sell far outweighs any convenience to Elite, which is otherwise subject to the forum selection clause.

Additionally, while Sell argues it is not unfair to require Defendants to litigate in their home district (*see* Resp. 16–19), he has failed to convincingly demonstrate why the Northern District is an inconvenient forum.  Sell resides in the Northern District, and Plaintiffs' counsel are located in Minneapolis and Milwaukee, far closer to Hammond than to Miami.  (*See* Mot. 20–21).  Furthermore, Plaintiffs' counsel are already litigating a similar case in Hammond.  (*See id.* 21).

On balance this factor supports transfer to the Northern District.

e. *Locus of Operative Facts*

Defendants argue the locus of operative facts is in Indiana because the case focuses on the actions of DirectBuy: "Plaintiffs allege a franchisor headquartered in Indiana actively participated in a RICO enterprise from its Indiana headquarters."  (*Id.* 16).  According to

Defendants, DirectBuy made all of its decisions in Indiana, and if it sent fraudulent communications to franchisees, it did so from its Indiana headquarters.  (*See id.* 20).

Sell concedes the location of DirectBuy's actions but insists the case focuses on Defendants' conduct in Florida.  (*See* Resp. 8 (citing *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 518 (D. Conn. 2011) ("To determine the locus of operative facts, courts look to where the events from which the claim arises occurred." (internal quotation marks and citation omitted)))).  As Sell sees it, Florida is "at the center of the factual mix."  (*Id.*).

While the Complaint alleges the operative decisions to commit fraud were made in Florida (*see* Compl. ¶ 54), any fraudulent communications and misrepresentations are not those made from Defendants to DirectBuy, but rather those communicated from DirectBuy to the franchisees.  (*See id.* ¶¶ 56, 59–61, 69).  The Complaint pleads the fraudulent communications with, and misrepresentations to, the franchisees themselves came from DirectBuy.  It requires only a slight inference, consistent with the facts as pleaded and bolstered by the declaration of Trivest Partners's General Counsel and Chief Compliance Officer, David Gershman (*see* Gershman Decl.), to conclude any fraudulent communications and misrepresentations occurred or originated in Indiana.  Rather than definitively establishing Florida as the locus of operative facts, *Retterath v. Homeland Energy Solutions, LLC*, No. 13-80942-CIV, 2014 WL 1515522, at *2 (S.D. Fla. Apr. 17, 2014), a case addressed in the parties' papers, suggests the locus of operative facts — or rather loci — are in both Florida, where the alleged decisions to commit fraud were made, and in Indiana, where the allegedly fraudulent misrepresentations and communications were uttered.  Similarly, "implementation of the project at issue," (Resp. 9 (citing *Credit Bureau Services, Inc. v. Experian Info. Solutions, Inc.*, No. 12-61360-Civ, 2012 WL 6102068, at *24 (S.D. Fla. Dec. 7, 2012))), as opposed to conception of the "project," would

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

just as likely have occurred in Indiana, even if the decision to begin the "project" allegedly took place in Florida.[5]

Sell seems to imply the Court should disregard Defendants' factual submissions because on a motion to transfer the allegations of the Complaint are taken as true. (*See* Resp. 8 n.5 (quoting *Bossom v. Buena Cepa Wines, LLC*, 11 CV6890 (VB), 2011 WL 6182368, at *1 (S.D.N.Y. Dec. 12, 2011))). But Defendants' argument the allegedly fraudulent misrepresentations and communications occurred almost entirely in or from Indiana does not contradict the Complaint. At least 14 paragraphs of the Complaint describe fraudulent activities and representations ostensibly conducted in, or originating from, Indiana. (*See* Reply 9 (citing Compl. ¶¶ 59–61, 68–70, 94–97, 99–102)).

Additionally, Plaintiffs' counsels' admission in the July 29 Statements that "all of the claims in *ArcAngelo*, decided or undecided, against Trivest or against DirectBuy, are grounded in the same set of facts, *i.e.*, facts regarding DirectBuy's imposition of exorbitant charges for national marketing and advertising and the great economic harm these charged caused DirectBuy franchisees" (July 29 Statements 16), severely undercuts Sell's assertion Florida is the only locus of operative facts. Therefore, this factor does not weigh against transfer to the Northern District, as the Northern District is a locus of operative facts.

f.    *Relative Means of the Parties*

The parties agree this factor is neutral. (*See* Mot. 20–21; Resp. 9). Therefore, it does not weigh against transfer to the Northern District.

*       *       *

---

[5] Sell cites paragraphs of the Complaint to demonstrate he pleads operative facts in Florida (*see* Resp. 10), but beyond allegations regarding the location of Defendants' decision-making and communications with DirectBuy, discussed above, the alleged facts — even those cited by Plaintiff — suggest Indiana is also a locus of operative facts (*see, e.g.*, Compl. ¶¶ 69, 106).

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

The Court concludes the private interest factors strongly favor transfer of Sell's claims against Defendants.  The Court now turns to the public interest factors.

### 3.     The Public Interest Factors Weigh in Favor of Transfer

Public interest factors include the chosen forum's familiarity with governing law, trial efficiency and the interests of justice.  *See Manuel*, 430 F.3d at 1135 n.1.  Courts also consider administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum.  *ShadeFX Canopies, Inc. v. Country Lane Gazebos, LLC*, No. 13-80239-Civ, 2013 WL 9827411, at *2 (S.D. Fla. June 14, 2013) (citation omitted).

#### a.     Familiarity with Governing Law

Plaintiffs assert three claims under two laws, one federal (RICO), and one state (FDUTPA).  Both courts are equally familiar with federal law, while this District is presumed to be more familiar with Florida law.  *See Gibbs & Hill, Inc. v. Harbert Intern., Inc.*, 745 F. Supp. 993, 997 (S.D.N.Y. 1990).  The latter observation is not remarkable, however.  This is because the express purpose of FDUTPA, modeled after its federal counterpart, the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 45(a)(1), is to "make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection."  FLA. STAT. § 501.202(3).  All 50 states have enacted consumer protection laws prohibiting unfair and deceptive trade practices, many of which are modeled after the FTC Act. *See* Stephen V. Iglesias, *Striking Affirmative Defenses in Government Litigation,* 79 FLA. B. J. 48, 51 (2005).  And a claim for damages under FDUTPA has three basic elements: a deceptive

act or unfair practice, causation, and actual damages.  *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

Defendants also point out FDUTPA may not apply to Sell or other putative class members located outside of Florida (*see* Mot. 16 (citing *In re NationsRent Rental Fee Litig.*, Case No. 06-60924-CIV, 2009 WL 636188, at *6 (S.D. Fla. Feb. 24, 2009)), given that

> in class actions, basic choice of law principles often result in the unfair trade practice laws of each class member's state applying instead of a single state's law. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011). Thus, there is little reason to expect that the Court overseeing the case will need more intimate knowledge of FDUTPA than of the trade practice laws of other States, including Indiana.  In addition, an expertise in FDUTPA is not necessary to determine whether DirectBuy's franchise agreements permitted its sales lead charges, an issue already before [the court in *ArcAngelo*].

(Reply 7 n.4 (alterations added)).  These points are well-taken.

Once transferred, under the related case rules in the Northern District, this action will likely be assigned to the *ArcAngelo* court.  Given the uncertainty this putative class action will involve FDUTPA any more than the trade practice laws of any other state; combined with the efficiencies gained by likely assignment of the case to a court already familiar with the factual and legal claims against DirectBuy — which as Plaintiffs' counsel has recently stated, are "inextricably intertwined" with those they seek to bring against the present Defendants — the Court finds this factor does not weigh against transfer to the Northern District.

### b.   Local Interests and Jury Duty

Indiana has as much interest in this case as Florida.  Certainly the action involves a Middle District of Florida plaintiff and Florida-based Defendants.  Yet, the suit squarely focuses on the actions of an Indiana-based company, DirectBuy, its alleged RICO and consumer law violations purportedly directed by the Florida Defendants who acquired control over it, and how

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

it treated its franchisees around the country.  Sell resides in Indiana.  There would be no unfair burden placed upon Indiana citizens serving on a jury passing upon the legality of the challenged conduct.

c.    <u>Trial Efficiency and Interests of Justice in Totality</u>

Defendants provide statistics showing the Northern District has approximately 200 fewer weighted filings per judge than the Southern District of Florida.  (*See* Mot. 15; *id.* Ex. E). Plaintiffs argue while there may be fewer weighted cases in the Northern District, the Southern District of Florida is faster and more efficient at case disposition than is the Northern District, and therefore a transfer to the Northern District is not in the public interest.  (*See* Resp. 12).  The Court disagrees.  Two hundred fewer cases per judge is a substantial figure, and even the Southern District of Florida's noted efficiency has not alleviated a highly congested docket. Defendants seek transfer to a less crowded docket where the first of several related cases was filed almost two years ago.  Transfer will undoubtedly conserve the Court's judicial resources without burdening the Northern District, where a district judge and magistrate judge are familiar with the essential facts and have ruled upon legal issues pertinent to this action.  (*See* Reply 7–8).

Even though there is a recognized interest in selecting a forum capable of resolving an action quickly, this interest does little to negate, no less outweigh, the substantial, stronger, and more heavily weighted judicial interest in transferring potentially duplicative litigation, based on facts, issues, and even counsel with which the Northern District is already familiar, to a more convenient forum for Sell and the key witnesses.

## IV. CONCLUSION

Based on the foregoing section 1404(a) analysis, the Court finds both the private factors and the less-important public interest factors weigh in favor of transfer to the Northern District.

28

CASE NO. 15-22146-CIV-ALTONAGA/O'Sullivan

Defendants have met their burden of establishing the balance of factors strongly favors transfer of the claims brought by Sell. Even Plaintiffs' attorneys recognize the facts and claims involved in the ongoing litigation in the Northern District are "inextricably intertwined" with those Plaintiffs bring here. (July 29 Statements 16). As to the claims brought by Elite, under the modified analysis of *Atlantic Marine*, Elite has not come anywhere near demonstrating the "extraordinary circumstances unrelated to the convenience of the parties" required for the Court to deny transfer in accordance with a valid forum-selection clause. *See* 134 S. Ct. at 581.

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1.      The Motion **[ECF No. 24]** is **GRANTED**.

2.      The Clerk is directed to transfer this proceeding to the Northern District of Indiana, Hammond Division, and mark this case as **CLOSED** in this District.

**DONE AND ORDERED** in Miami, Florida this 21st day of August, 2015.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

29